PEOPLE v AVERILL

1. C<span style="font-variant:small-caps">RIMINAL</span> L<span style="font-variant:small-caps">AW</span>—E<span style="font-variant:small-caps">VIDENCE</span>—C<span style="font-variant:small-caps">REDIBILITY</span>—P<span style="font-variant:small-caps">RIOR</span> C<span style="font-variant:small-caps">ONVICTIONS</span>—
    P<span style="font-variant:small-caps">ROSECUTORS</span>—J<span style="font-variant:small-caps">UDGES</span>—D<span style="font-variant:small-caps">ISCRETION</span>.

    The prosecution's use of a defendant's prior convictions for im-
    peachment purposes rests in the sound discretion of the trial
    court and where defense counsel failed to ask the trial court to
    exclude reference to the defendant's prior conviction record the
    defendant cannot fault the trial court for failing to exercise its
    discretion when it allowed impeachment on the basis of prior
    convictions.

2. C<span style="font-variant:small-caps">RIMINAL</span> L<span style="font-variant:small-caps">AW</span>—E<span style="font-variant:small-caps">VIDENCE</span>—P<span style="font-variant:small-caps">RIOR</span> C<span style="font-variant:small-caps">ONVICTIONS</span>—I<span style="font-variant:small-caps">NSTRUCTIONS TO</span>
    J<span style="font-variant:small-caps">URY</span>—C<span style="font-variant:small-caps">URATIVE</span> I<span style="font-variant:small-caps">NSTRUCTIONS</span>.

    Testimony of a complaining witness that a defendant had told
    her that he had a prison record did not prejudice the defendant
    where the witness revealed on cross-examination that she had
    mistakenly attributed the statement to the defendant and the
    trial court instructed the jury to disregard the testimony.

3. C<span style="font-variant:small-caps">RIMINAL</span> L<span style="font-variant:small-caps">AW</span>—E<span style="font-variant:small-caps">VIDENCE</span>—P<span style="font-variant:small-caps">RIOR</span> C<span style="font-variant:small-caps">ONVICTIONS</span>—P<span style="font-variant:small-caps">REJUDICE</span>—D<span style="font-variant:small-caps">E-</span>
    <span style="font-variant:small-caps">FENDANT AS</span> W<span style="font-variant:small-caps">ITNESS</span>.

    Evidence regarding a defendant's prior criminal involvement is
    highly prejudicial and, hence, inadmissible until such time as
    the defendant takes the witness stand and raises the issue of
    his character or credibility, or unless such evidence is material
    and relevant to some other issue being tried.

4. C<span style="font-variant:small-caps">RIMINAL</span> L<span style="font-variant:small-caps">AW</span>—E<span style="font-variant:small-caps">VIDENCE</span>—W<span style="font-variant:small-caps">ITNESSES</span>—P<span style="font-variant:small-caps">RIOR</span> C<span style="font-variant:small-caps">ONVICTIONS</span>—S<span style="font-variant:small-caps">PE-</span>
    <span style="font-variant:small-caps">CIFIC</span> I<span style="font-variant:small-caps">NTENT</span>.

    It is not improper for a witness to make a reference to a
    defendant's prior criminal record where the reference is rele-
    vant to a defense of an alleged lack of a specific intent constitu-
    ting an element of the crime.

R<span style="font-variant:small-caps">EFERENCES FOR</span> P<span style="font-variant:small-caps">OINTS IN</span> H<span style="font-variant:small-caps">EADNOTES</span>
[1–4] 58 Am Jur, Witnesses § 749.
[5, 6] 21 Am Jur 2d, Criminal Law §§ 222, 309.

5. ATTORNEY AND CLIENT—CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—HARMLESS ERROR.

   Defense counsel's failure to determine whether a defendant had made a statement to the police was harmless error and the defendant was not deprived of the effective assistance of counsel where there was no claim that the statement was not voluntary and where the circumstances of the defendant's arrest and the testimony of the complainant were highly probative of the defendant's guilt.

6. ATTORNEY AND CLIENT—CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—TACTICS OF COUNSEL.

   A defendant was not deprived of the effective assistance of counsel because of his attorney's failure to interview a codefendant where the codefendant remained silent at the trial and where the defense attorney may have had tactical reasons *not to interview the codefendant to avoid testimony by him.*

Appeal from Hillsdale, Kenneth G. Prettie, J. Submitted Division 2 January 14, 1975, at Lansing. (Docket No. 19684.) Decided March 12, 1975.

Charles B. Averill was convicted of unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Lawrence L. Hayes, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *William P. Weiner,* Special Assistant Attorney General, of counsel), for the people.

*Elizabeth Schwartz,* Assistant State Appellate Defender, for defendant.

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

T. M. BURNS, P. J. On December 13, 1973, defendant Charles Bryce Averill was convicted by a jury of unarmed robbery. MCLA 750.530; MSA

28.798. He was sentenced on December 27, 1973, to a term of from 3 to 15 years in prison with credit for time already served while awaiting trial. Defendant now appeals as of right.

There are nine assignments of error. We have examined them all. Those to which we do not specifically advert have not been disregarded. Rather, we consider them to have raised issues of insufficient substance to merit decisional discussion.

Defendant contends that the prosecutor's improper use of prior convictions for impeachment purposes and his introduction of allegedly irrelevant impeachment evidence deprived him of a fair trial.

In *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), our Supreme Court held that the question of whether or not a prior conviction should be excluded rests in the sound discretion of the trial court. The Court pointed out the absence of mandatory language in the applicable statutes which authorize the use of prior convictions for impeachment purposes.[1] Thus it was determined that a trial court may preclude impeachment where the prejudicial effect is too great. See also *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971).

However, these decisions presuppose a request by defense counsel to limit the use of prior convictions. *People v Jackson, supra,* at 336; 217 NW2d at 26. In the case at bar, defense counsel made no such request on the record.[2] In *People v Moore,* 391 Mich 426, 435; 216 NW2d 770, 775 (1974), the

---

[1] MCLA 600.2159; MSA 27A.2159 in conjunction with MCLA 600.2158; MSA 27A.2158.

[2] While defense counsel did object that reference to defendant's prior record was prejudicial, these objections were registered in relation to alleged statements made by defendant to witnesses. At no time did defense counsel specifically request the trial court to limit or exclude reference to defendant's prior convictions.

Supreme Court held that where defense counsel failed to ask the trial court to exclude reference to defendant's prior conviction record, the defendant could not fault the trial court for failing to exercise its discretion when it allowed impeachment on the basis of prior convictions.

Defendant claims that he is entitled to a new trial because before he took the stand, prosecution witnesses twice alluded to the fact that he had a prior criminal record. However, our review of the testimony reveals nothing which would warrant reversal of defendant's criminal conviction.

The first reference to defendant's criminal record was made by the complainant, Miss Green, who testified that defendant had told her that he had been in prison before. However, on cross-examination it was revealed that it was actually codefendant Leroy Croston, and not the defendant, who had made this statement to Miss Green. As soon as the trial court became aware of this slip of the tongue by Miss Green, it instructed the jury to disregard her statement. Since Miss Green's reference to a prior record was finally attributed to Croston and not the defendant, we fail to see how the defendant could have been prejudiced thereby. Accordingly, we find no error.

The next allusion to defendant's prior record occurred when Trooper James Justice testified that defendant mentioned to him that he had a prior record. The complained-of remark was volunteered by the witness and not deliberately elicited by the prosecutor.[3]

Relying on *People v Buffa,* 51 Mich App 680; 216 NW2d 494 (1974), defendant asserts that it was error to allow this reference to prior criminal

---

[3] Indeed, the record reveals that after this statement was made, the prosecutor, out of the presence of the jury, cautioned the witness not to make any further reference to the defendant's prior record.

activity before he decided to testify. While we acknowledge the rule stated in *Buffa,* we are of the opinion that one of the exceptions to that rule governs this case. In stating the rule and its exceptions, Judge McGregor wrote, at 683; 216 NW2d at 495–496:

"Such evidence regarding defendant's prior criminal involvement is highly prejudicial and, hence, inadmissible until such time as the defendant takes the witness stand and raises the issue of his character or credibility, *or unless such evidence is material and relevant to some other issue being tried. People v Gardner,* 37 Mich App 520; 195 NW2d 62 (1972); see also McCormick, Evidence (2d ed), § 190, p 447, *et seq."* (Emphasis supplied.)

The discussion in McCormick partially notes the following policy reasons for the existence of the exceptions to the rule on admissibility.

"The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character. *There are numerous other purposes for which evidence of other criminal acts may be offered, and when so offered the rule of exclusion is simply inapplicable."* McCormick, Evidence (2d ed), § 190, pp 447–448. (Emphasis supplied.)

McCormick then lists a number of possible exceptions, one of which we deem relevant to this case:

"To establish motive. This in turn may serve as evidence of the identify of the doer of the crime on charge, *or of deliberateness, malice, or a specific intent*

*constituting an element of the crime."* McCormick, *supra,* pp 450–451 (Emphasis supplied.)

We are of the opinion that where, as here, the thrust of the defense is defendant's alleged lack of intent, the above-mentioned exception is applicable. Therefore, the reference to defendant's prior record does not mandate reversal. Indeed, as defense counsel has pointed out, the reason defendant allegedly lacked the requisite specific intent and the reason he voluntarily submitted himself to the authorities was because of his prior misfortunes with the law.

Defendant next claims that he was denied a fair trial due to the incompetence and ineffectiveness of his trial counsel. Defendant urges this Court to reject the *Degraffenreid*[4] standard for effective assistance of counsel and to adopt in its place the higher standard announced in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). However, we do not feel it is necessary to weigh the merits of either standard in this case, since we are of the opinion that none of defense counsel's actions merit characterizing his representation of defendant as incompetent or ineffective. We need discuss only two of his actions.

The claim that defendant is entitled to a new trial because his counsel was unaware of a statement defendant had given to the police is meritless. Although defense counsel should have been aware of the statement, his lack of knowledge as to its existence did not prejudice the defendant. There was no claim at trial that the statement was not voluntary, nor is the voluntariness of the statement challenged on appeal. Therefore, what

---

[4] *People v Degraffenreid,* 19 Mich App 702, 710; 173 NW2d 317, 321 (1969).

we have is the fact that defense counsel may have been somewhat embarrassed by the fact that he did not know the statement existed and nothing else. The circumstances of defendant's arrest a short time after the robbery and the testimony of the complainant are so highly probative of guilt that trial counsel's failure to determine whether defendant had made a statement to the police was harmless error.

Likewise, defendant's claim that the trial counsel's failure to interview Leroy Croston, defendant's accomplice, constituted inadequate assistance is without merit. Croston was called by the prosecutor to testify and, once under oath, refused to answer any questions relating to the crime in an exercise of his Fifth Amendment rights. Defense counsel attempted unsuccessfully to cross-examine him.

We fail to see how defense counsel's failure to interview Croston prejudiced the defendant. Since Croston refused to testify concerning the crime itself, the fact that defense counsel did or did not interview him is irrelevant. Furthermore, Croston's refusal to testify did not prejudice the defendant and actually may have helped him. Defendant admitted his presence at the crime, maintaining that he took no active part in it and that he failed to prevent it because he feared Croston. Since Croston remained silent, no reflection on defendant's culpability occurred based on the defense's theory that Croston committed the crime himself.

We find that defense counsel's failure to interview Croston may well have been a tactical decision, but that if it was not, it did not prejudice defendant and therefore did not constitute ineffective assistance of counsel. Counsel may have de-

cided not to encourage Croston to testify for fear that he may have testified that he did not act alone, but that defendant willingly participated in the robbery thus negating the theory of the defense. Defense counsel may well have decided not to interview Croston to avoid this result.

Lastly, by way of a supplemental brief, defendant now raises the question of whether 1968 PA 154, which created the district court and provided it with criminal jurisdiction, is in violation of the title-body clause, Const 1963, art 4, § 24. We need only state in reply that this question was recently decided adversely to defendant by a unanimous Michigan Supreme Court. See *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

Affirmed.