## PEOPLE v DYSON

Docket No. 46374. Submitted September 3, 1980, at Detroit.—Decided May 5, 1981.

Lee Dyson was convicted of larceny from a person, Detroit Recorder's Court, James E. Roberts, J. He appeals, alleging that the trial court erred in allowing testimony on rebuttal which resulted in a denial of his right to remain silent, in failing to recognize its discretionary authority before admitting evidence of his prior conviction, in admitting photographic evidence of defendant at the time of arrest, in permitting comment by the prosecutor regarding certain evidence which was not supported by the record, that he was denied effective assistance of counsel, and that the trial court erred in failing to instruct the jury, *sua sponte,* on the inherent unreliability of identification testimony. *Held:*

1. The trial court properly allowed testimony on rebuttal of defendant's silence following arrest for the purpose of impeachment of defendant's inconsistent statement during trial that he had offered an alibi.

2. The trial court's failure to enunciate on the record its consideration of the factors necessary for a proper exercise of discretion in admitting evidence of defendant's prior conviction for the purpose of impeachment constituted error. But such

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 269.
   30 Am Jur 2d, Evidence §§ 1082, 1083.
[3] 29 Am Jur 2d, Evidence § 269.
[4, 5] 29 Am Jur 2d, Evidence § 327.
   76 Am Jur 2d, Trial § 1244.
[6] 29 Am Jur 2d, Evidence §§ 371.8, 785, 786, 791.
[7] 75 Am Jur 2d, Trial § 251 *et seq.*
[8, 9] 21 Am Jur 2d, Criminal Law §§ 315, 321.
   Adequacy of defense counsel's representation of criminal client regarding argument. 6 ALR4th 16.
   Modern status of rule as to test in federal court of effective representation by counsel. 26 ALR Fed 218.
[10] 75 Am Jur 2d, Trial § 682 *et seq.*
   81 Am Jur 2d, Witnesses § 69.

error was harmless beyond a reasonable doubt because the record reveals that the court considered the appropriate standards for exercise of its discretion prior to making its ruling.

3. The trial court did not err in exercising its discretion to admit photographic evidence of defendant's appearance at the time of arrest.

4. The trial court erred in permitting the prosecutor to comment during closing argument regarding evidence tending to inculpate defendant which was not supported by the record. But reversal is not required because no objection was raised by defendant during trial and the trial court gave the appropriate cautionary instruction to the jury.

5. Defendant was not denied the effective assistance of counsel.

6. The trial court did not abuse its discretion in failing, *sua sponte,* to instruct the jury on the inherent unreliability of eyewitness identification.

Affirmed.

1. CRIMINAL LAW — WITNESSES — IMPEACHMENT — RIGHT TO REMAIN SILENT — REBUTTAL TESTIMONY.

Evidence of a criminal defendant's refusal to speak during interrogation is admissible during trial only to impeach his own inconsistent statements made during trial and may be introduced as rebuttal testimony.

2. CRIMINAL LAW — WITNESSES — IMPEACHMENT — REBUTTAL TESTIMONY.

A party in a criminal action is free to contradict answers which he has elicited from his adversary on cross-examination as to germane, relevant, and material matters; however, generally, the only type of contradictory evidence admissible on rebuttal is that which directly tends to disprove the exact testimony given by a witness.

3. EVIDENCE — REBUTTAL TESTIMONY.

A prosecutor may not use rebuttal testimony to introduce substantive evidence which properly belongs to his case in chief.

4. CRIMINAL LAW — COURTS — EVIDENCE — IMPEACHMENT — JUDICIAL DISCRETION.

A trial court, in its discretion, may allow the introduction of evidence of a defendant's prior convictions for purpose of impeachment; however, the court must indicate and identify positively on the record its exercise of discretion in allowing or

barring such evidence and its consideration of the necessary factors in arriving at its decision.

5. CRIMINAL LAW — COURTS — EVIDENCE — IMPEACHMENT — JUDICIAL DISCRETION.

Failure by a trial court in a criminal case to enunciate on the record its consideration of the factors necessary for a proper exercise of discretion in admitting or barring evidence of a defendant's prior convictions for the purpose of impeachment constitutes error, but such error is harmless beyond a reasonable doubt where the record reveals that the court, prior to exercising its discretion, considered the appropriate standards.

6. CRIMINAL LAW — PHOTOGRAPHIC EVIDENCE — JUDICIAL DISCRETION — APPEAL.

Photographic evidence of a defendant's appearance at the time of arrest is admissible in the discretion of the trial court where the defendant's appearance at the time of trial differs from his appearance at the time of the incident which is the basis for the charges against the defendant and identification was a primary issue in the case, and on appeal the decision of the trial court will not be disturbed unless clearly erroneous.

7. CRIMINAL LAW — PROSECUTING ATTORNEYS — IMPROPER ARGUMENT.

The allowance of a prosecutor's comments during closing argument regarding evidence which would tend to inculpate the defendant which is not supported by the record constitutes error but does not require reversal where no objection is raised by defendant during trial and a cautionary instruction regarding the evidence is given by the trial court.

8. CRIMINAL LAW — APPEAL — EFFECTIVE ASSISTANCE OF COUNSEL — STANDARD OF REVIEW.

The standard of review in determining whether a defendant has been denied effective assistance of counsel is whether counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law, whether counsel conscientiously protected defendant's interests, undeflected by conflicting considerations, and, if a mistake was made, whether it was one but for which the defendant would have had a reasonable likelihood of acquittal.

9. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — TRIAL STRATEGY.

Decisions of defense counsel in a criminal case relative to trial

strategy will not support a claim of ineffective assistance of counsel.

10. CRIMINAL LAW — WITNESSES — EYEWITNESS IDENTIFICATION — JURY INSTRUCTIONS.

Eyewitness identification of an accused may be inherently unreliable, and appropriate cautionary instructions should be given by a trial court where the reliability of an eyewitness is questionable; however, no instruction should be given where the identification is positive and unqualified, even after cross-examination, and where instruction would serve only to confuse the jury (CJI 7:7:01, Commentary).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Michael D. Lehto,* Assistant Prosecuting Attorney, for the people.

*Angela R. Sims,* for defendant on appeal.

Before: D. C. RILEY, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

D. C. RILEY, P.J. Defendant was convicted by a jury of larceny from a person, contrary to MCL 750.357; MSA 28.589, sentenced to serve from one to ten years in prison, and appeals as of right. Of the six assertions of error raised by defendant, we conclude that none, individually or collectively, necessitates reversal and therefore affirm defendant's conviction.

I

Defendant contends that the trial court committed error requiring reversal by allowing the prosecutor to recall two police officers to rebut the defendant's testimony that he repeatedly told the officers that he was helping a friend move when he was arrested. After careful examination of the

record, we conclude that the rebuttal testimony was permissible since its evidentiary function was to impeach, contradict, and repel defendant's inconsistent testimony at trial.

In the instant case, the prosecutor's case in chief primarily rested on the complainant's positive identification of the defendant.

The defendant took the stand on his own behalf and presented an alibi defense. The essence of his alibi was that he had spent the relevant period of time helping a friend move from one home to another. Defendant testified that he was on his way home from helping this friend move when he was picked up by the police and taken to a restaurant where the complainant erroneously identified him as her assailant.

On cross-examination, the defendant was asked if he had told the complainant when she identified him that he had been helping a friend move. The defendant testified that he, indeed, had told his alibi to the complainant. Moreover, he affirmatively testified that he also had told his alibi to the police officers when they first stopped him. The defendant, on redirect examination, maintained that he attempted to explain to the officers where he had been but the officers kept telling him to "shut up". And, on recross-examination, defendant testified that he offered his alibi to the police but that they were not interested in hearing it.

In rebuttal to the defendant's testimony that he had consistently told the complainant and the police officers his side of the story, the prosecution recalled the two arresting officers. In response to narrow, specific questions, both officers testified that, contrary to defendant's testimony, he had not told them at the time of his arrest that he had been helping a friend move.

On these facts, we find that the officers' testimony was proper rebuttal testimony.

Initially, it is necessary to address the pivotal issue of whether testimony is ever admissible at trial to show that the accused remained silent at the time of the arrest. *People v Bobo,* 390 Mich 355, 359; 212 NW2d 190 (1973), establishes the general rule that the silence of an accused may not be used against him at trial subject to the recognized exception that a defendant's refusal to speak is admissible to impeach his own inconsistent statements at trial.

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. 'Nonutterances' are not statements. *The fact that a witness did not make a statement may be shown only to contradict his assertion that he did."* (Emphasis added.)

In *Bobo,* the Court explicitly recognized that their previous holding in *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971), continued as the viable exception.

In *Graham,* the defendant testified that he repeatedly told the police at the time of his arrest and while incarcerated that he wanted to explain the whole situation involved in his arrest. The prosecutor cross-examined the defendant as to these assertions. Thereafter, in rebuttal, the police officers were permitted to testify that the defendant had remained silent. The *Graham* Court noted that an accused has a right to testify or not testify in his own behalf. But once he chooses to take the stand to testify, this privilege cannot be convoluted into a license to commit perjury. Hence, the introduction of otherwise inadmissible evidence is permissible to contradict, impeach, or

controvert his trial testimony. Thus, the *Graham* Court, on facts very similar to the instant case, reached the following, oft-cited conclusion:

> "In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial." *Id.,* 458.

The facts in the instant case closely parallel the facts in *Graham.* At trial, defendant testified that he continually attempted to tell his side of the story. Like defendant Graham, "[h]e painted a picture of an innocent individual who attempted at every turn to explain a basic misunderstanding". *Id.* The testimony of the police officers fell within this recognized exception, *i.e.,* impeachment of defendant's own inconsistent statements at trial. See, also, *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), *People v Ames,* 60 Mich App 168; 230 NW2d 360 (1975), *People v Gant,* 55 Mich App 510; 222 NW2d 784 (1974), *People v Shegog,* 44 Mich App 230; 205 NW2d 278 (1972).

Having concluded that the testimony of the police officers was admissible to impeach defendant's own inconsistent statements at trial, we also conclude that it was properly brought in as rebuttal testimony.

Defendant's interjection of an alibi defense made evidence bearing on this defense both relevant and material. The defendant attempted to strengthen this alibi by testifying on cross-examination that he initially told the police officers that he had an alibi but that the officers were uninterested. Clearly, evidence which directly contradicts this direct assertion of defendant, even though elicited on cross-examination, is proper rebuttal testimony.

In *People v McGillen #1,* 392 Mich 251, 266,

268; 220 NW2d 677 (1974), the Court, after stating that a party is free to contradict the answers which he has elicited from his adversary on cross-examination as to germane, relevant, and material matters, stated:

"Generally, the only type of contradictory evidence that is admissible [on rebuttal] is that which directly tends to disprove the *exact* testimony given by a witness." (Emphasis added.)

The testimony of the police officers squarely falls within these confines. The defendant attempted to bolster his alibi defense by testifying that he previously told the story to the police officers. The rebuttal testimony of the officers was that he had not told them. It was a simple contradiction of defendant's testimony that directly tended to disprove the exact testimony given by the witness. As so limited, it was proper rebuttal testimony, serving to impeach defendant on a material and relevant matter. *McGillen #1, supra, People v Parker,* 65 Mich App 592, 595; 237 NW2d 572 (1975), *lv den* 397 Mich 816 (1976), *People v Rosemary Gibson,* 71 Mich App 543, 550; 248 NW2d 613 (1976).

Finally, we note that *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), and its progeny are inapplicable to the facts of the instant case. *Bennett* stands for the legal proposition that a prosecutor may not use rebuttal testimony to introduce substantive evidence which properly belongs to his case in chief. It is aimed at preventing an unfair ordering of proofs. This problem does not exist in the instant case. The prosecutor was precluded from introducing in its case in chief any evidence of defendant's silence by the *Bobo* rule. Hence, there is no problem of improper and unfair ordering of proofs.

More specifically, the *Bennett* opinion is aimed at the ruse of eliciting a "denial" of some statement not properly in the case so as to interject an issue under the guise of rebutting the "denial". The "denial" by the defendant is used as a spring board for introducing substantive evidence on a collateral matter.

In the instant case, the prosecutor did not elicit a "denial" that the defendant made specific statements; rather, the defendant positively and affirmatively testified that he did indeed make the statements to the police. In rebuttal, the prosecution limited its scope solely to direct contradiction of the statements allegedly made.

In short, the facts in *Bennett* and the instant case are diametrically opposite, and, hence, *Bennett* is not controlling.

## II

Defendant asserts that the trial court committed error requiring reversal by failing to recognize its discretionary authority to exclude references to defendant's prior conviction in 1977 of issuing a check without account or credit.

Whether or not to allow impeachment by prior convictions is within the trial judge's discretion. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). However, as stated in *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974), "the trial court must positively indicate and identify its exercise of discretion", in allowing or barring testimony regarding prior convictions. The instant judge never explicitly recognized his discretion on the record and it is not clear that he considered the factors enunciated in *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978).

Although the court erred in failing to explicitly note the *Crawford* factors on the record, examination of the lengthy argument the court had with counsel prior to his ruling convinces us that he considered the appropriate standards before making his ruling. See *People v Joyner,* 93 Mich App 554, 560-561; 287 NW2d 286 (1979). Further, the error was harmless beyond a reasonable doubt. *People v Wilkins,* 82 Mich App 260, 272; 266 NW2d 781 (1978).[1]

### III

We find no merit in defendant's contention that the trial court erred in admitting into evidence a photograph of defendant taken shortly after his arrest. We note that the admission of such evidence rests within the sound discretion of the trial judge. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972). In addition, the trial court's decision regarding the admissibility of evidence will not be disturbed on appeal unless clearly erroneous. *People v McKinney,* 88 Mich App 715; 278 NW2d 728 (1979).

---

[1] Unlike the case of *People v Denny,* 86 Mich App 40; 272 NW2d 332 (1978), where the admission of a similar conviction discouraged the defendant from taking the stand, here defense counsel, for tactical reasons, chose to soften the impact of the prior conviction by questioning defendant about it on direct examination. See *People v Wilbourne,* 44 Mich App 376; 205 NW2d 250 (1973). In addition, we believe that *had* the judge properly delineated his discretion on the record, evidence of the conviction could have been admitted.

In light of defendant's fleeting reference to his prior conviction and the prosecutor's failure to mention it at all, we consider its admission into evidence harmless.

We further note that by Supreme Court Administrative orders adopted May 9, 1980, the Court amended MRE 609. MRE 609(a)(2) now provides that before allowing impeachment by evidence of a prior conviction, the court determines "that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination." 408 Mich cxv (1980).

Since defendant's appearance at the time of trial differed from his appearance at the time of the incident and identification was a primary issue in the case, and since the photograph in question was taken shortly after defendant's arrest on the day of the incident, we conclude that the trial judge clearly did not err in exercising his discretion to admit the photograph into evidence.

## IV

Defendant's next assignment of error concerns the prosecutor's comment during closing argument to the effect that the complainant had a chance, after the incident in question, to pick defendant out of a photographic display, despite the fact that this comment lacked support in the record. As defendant points out, the record does not substantiate that the complainant was shown a photograph of the defendant or that she attended a photographic identification. However, in light of the fact defense counsel failed to object at trial and since the trial judge read the jury a cautionary instruction (see CJI 3:1:09), we believe that the improper argument did not rise to the level of error requiring reversal.

## V

Defendant claims that he was denied effective assistance of counsel because defense counsel elicited inculpatory testimony from one of the arresting officers during cross-examination concerning defendant's silence at the time of his arrest.

In *People v Hanna,* 85 Mich App 516, 523; 271 NW2d 299 (1978), the Court set forth the standard of review to be used when determining whether a

defendant has been denied effective assistance of counsel:

"On review of such a claim, the questions posed are: Did defense counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law, and did he conscientiously protect his client's interests, undeflected by conflicting considerations? If a mistake was made by defense counsel, was that mistake one but for which defendant would have had a reasonable likelihood of acquittal?" (Footnote omitted.)

However, the Michigan courts have determined that decisions relative to trial strategy will not support a claim of ineffective assistance of counsel. *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976), *People v Roberson,* 90 Mich App 196, 204; 282 NW2d 280 (1979), *People v Malchi White,* 81 Mich App 226, 229; 265 NW2d 100 (1978).

Our review of the record convinces us that defense counsel performed up to the standard outlind in *Hanna, supra.* It is probably the case that defense counsel was told by his client that he had told the arresting officers upon his arrest that he had been helping a friend move at the time of the incident since defendant testified to that effect later in the trial. Thus, it appears that defense counsel's questioning of the police officer was valid trial strategy. The fact that she elicited an answer which she did not expect should not serve as a reason for finding her assistance to defendant ineffective. We therefore reject this contention.

## VI

Finally, defendant claims that the trial court committed error requiring reversal by failing to instruct the jury, *sua sponte,* on the inherent dangers of identification testimony. CJI 7:7:01. We

note at the outset that, contrary to defense counsel's brief, trial counsel did request an identification instruction and objected to the court's failure to so instruct the jury.

As defendant points out in his brief, the courts have recently recognized the inherent unreliability of eyewitness identification. See *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973). As the commentary to CJI 7:7:01 indicates, however, under certain circumstances, instructions on identification would serve only to confuse the jury and therefore should not be given.[2] An example would be where the witness is positive as to identity, even after searching cross-examination, and where the witness was in a position permitting him or her clearly to observe the person committing the crime.

In the instant case, the complainant was positive of her identification of defendant as the man who took her money, even after extensive cross-examination. We cannot say that the trial court abused its discretion in denying defense counsel's request to instruct the jury on the dangers of identification testimony.

Affirmed.

---

[2] The commentary to the recommended instructions provide the following guidelines:

"NOTE: *The identification instruction should be given only* when the identifying witness was not in a position which would permit him to observe clearly the person committing the crime, when the witness is not positive as to identity, when his positive statements as to identity are weakened by qualification, by failure to identify the defendant on one or more other occasions or by a prior inconsistent identification or when his identification testimony otherwise appears to be doubtful. *No instruction on identification testimony should be given* when the identifying witness had a good opportunity for positive identification, he is positive in his identification and his identification is not weakened by prior inconsistent identification or by prior failure to identify, but remains, even after cross-examination, positive and unqualified. To give an instruction on identification under these circumstances would serve only to confuse the jury." (Emphasis in original.) CJI, p 7-85.